CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
SARAH E. BALKISSOON (CABN 327066)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6474
    Fax: (415) 436-6748
    sarah.balkissoon@usdoj.gov

Attorneys for Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| J. DOE,<br><br>    Movant,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>    Respondent. | CASE NO. 3:25-MC-80325-PHK<br><br>**RESPONDENT'S OPPOSITION TO MOTION TO QUASH**<br><br>Date: January 8, 2026<br>Time: 1:30 p.m.<br>Courtroom: F, 15th Floor<br><br>Hon. Peter H. Kang |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................5

II. FACTUAL AND PROCEDURAL BACKGROUND.........................................................5

III. ARGUMENT........................................................................................................................6

    A. DHS Properly Issued the Summonses Pursuant to 19 U.S.C. § 1509 ................................7

        1. DHS Has Statutory Authority To Issue the Summonses ........................................8

        2. The Summonses Are Procedurally Proper ............................................................10

        3. The Information Sought Is Relevant to the Investigation....................................11

    B. The First Amendment Does Not Bar Disclosure ..............................................................12

        1. Movant Has Failed To Show How Disclosing Non-Content Subscriber Information Implicates the First Amendment Here ..............................................13

        2. The Government's Interest Prevails......................................................................14

        3. Movant's Arguments Are Inapposite....................................................................15

IV. Conclusion .........................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

B*rock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346 (9th Cir. 1988) .................................. 12

*Chevron Corp. v. Donziger*,
    No. 12-mc-80237 CRB (NC), 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ................................. 15

*Doe v. U.S. S.E.C.*,
    No. C 11-80209 CRB, 2011 WL 5600513 (N.D. Cal. Nov. 17, 2011) ................................. 12, 14, 15

*Doe v. United States SEC*,
    No. 3:11-mc-80184 CRB (NJV), 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) .......................... passim

*Dole v. Service Employees Union, etc., Local 280*, 950 F.2d 1456 (9th Cir. 1991) ..................... 12, 13, 14

*FDIC v. Garner*, 126 F.3d 1138 (9th Cir. 1997) ............................................................. 7

*Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963) ...................................... 14

*Highfields Capital Mgmt. LP v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005) .................................. 15

*People v. Shivers*, 186 Cal. Rptr. 3d 352 (Ct. App. 2015) .................................................. 14

*United States v. Barnes*,
    No. CR18-5141, 2019 WL 2515317 (W.D. Wash. June 18, 2019) ..................................... 9

*United States v. Cray*, 673 F. Supp. 2d 1368 (S.D. Ga. 2009) ............................................. 9

*United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108 (9th Cir. 2012) ................................ 7

*United States v. Marbelt*, 129 F. Supp. 2d 49 (D. Mass. 2000) ............................................ 9

*United States v. McLean*,
    No. SA–09–CR–270, 2010 WL 376381 (W.D. Tex. Jan. 25, 2010) ..................................... 9

*United States v. Merrell*, 88 F. Supp. 3d 1017 (D. Minn. 2015) ........................................... 9

*United States v. Wellbeloved-Stone*,
    No. 3:17-cr-00014, 2018 WL 1973286 (W.D. Va. Apr. 26, 2018) ..................................... 9

*United States v. Wilson*, 699 F.3d 235 (2d Cir. 2012) .................................................... 8

**STATUTES**

18 U.S.C. § 115 ............................................................................................ 6

18 U.S.C. § 2702 .......................................................................................... 10

19 U.S.C. § 1401 .......................................................................................... 8

19 U.S.C. § 1509 .......................................................................................... 8

19 U.S.C. § 1589 ........................................................................................ 8, 9

6 U.S.C. § 101 ............................................................................................................................... 8

6 U.S.C. § 203 ............................................................................................................................... 8

8 U.S.C. § 1101 ............................................................................................................................. 8

8 U.S.C. § 1357 ............................................................................................................................. 9

**OTHER AUTHORITIES**

DHS Delegation Number 7030.2, *Delegation of Authority to the Assistant
    Secretary for U.S. Immigration and Customs Enforcement* § 2(A) (Nov. 13,
    2004) ....................................................................................................................................... 8

Information for law enforcement authorities, Meta Safety Center,
    https://www.meta.com/safety/communities/law/guidelines/ (last visited Dec.
    2, 2025) ................................................................................................................................. 11

## I. INTRODUCTION

To investigate a threat to the safety of its agents and the performance of their duties, Respondent United States Department of Homeland Security ("Respondent" or "DHS") issued two summonses to Meta Platforms, Inc. ("Meta") to obtain basic subscriber information related to John Doe's social media accounts. John Doe runs Facebook and Instagram accounts that have tracked United States Immigration and Customs Enforcement ("ICE") agents and posted pictures and videos of agents' faces, license plates, and weapons, among other things. The summonses do not request any information regarding the content of the accounts, which are public. However, Respondent is entitled to investigate information it received indicating that John Doe, through his social media accounts, is threatening ICE agents to impede the performance of their duties, in violation of 18 U.S.C. § 115(a)(1)(B).

Meta failed to produce the requested information and the subscriber, John Doe, filed this motion to quash the summonses (ECF No. 1, "Mot."). Movant John Doe ("Movant") claims that the summonses exceed DHS's statutory authority and violate Movant's First Amendment rights. Movant is wrong on both fronts. First, Respondent is well within its statutory authority to serve summonses, like the ones at issue in this case, to investigate threats to its own agents and to obtain subscriber information related to an authorized investigation into attempts to impede the performance of ICE agents. Second, even assuming the summonses implicate Movant's First Amendment rights, DHS's interest in investigating a potential crime and interest in law enforcement prevails here. Movant's motion to quash should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Homeland Securities Investigations ("HSI") is an investigations component of ICE within DHS. In September 2025, HSI received information that two social media accounts were threatening federal agents to impede ICE enforcement. On September 11, 2025, HSI issued two summonses to Meta, seeking certain subscriber information (the "Summonses"). Decl. of Eric D. Mcloughlin ("Mcloughlin Decl.") ¶ 2. Summons No. HSI-PH-2025-082814-001 (the "Facebook Summons") sought subscriber information for the Facebook account https://www.facebook.com/61576856776412, "consisting of name, postal code, country, all email address(es) on file, date of account creation, registered telephone numbers, IP address at account signup, and logs showing IP address and date stamps for account accesses from 02/01/2025 to the present." Mcloughlin Decl. ¶ 2; *see also* Decl. of J. Doe in Support of Movant's Motion to Quash

Summonses ("Doe Decl.") Ex. A. Summons No. HSI-PH-2025-082819-001 (the "Instagram Summons") sought the same information for the Instagram account https://www.instagram.com/montcowatch. Mcloughlin Decl. ¶ 2; *see also* Doe Decl. Ex. B.

Both Summonses referenced 19 U.S.C. § 1509 and stated the records were required "in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by HSI." Doe Decl. Exs. A-B.

The deadline for production set forth in the Summonses was September 25, 2025. *Id*. On September 19, 2025, Meta responded that 19 U.S.C. § 1509(d)(1)(A) only authorized Respondent to obtain records pertaining to the importation of merchandise. Meta requested additional information about the offense under investigation and the Summonses' relevance to that investigation. On September 26, 2025, Respondent responded to Meta by citing "18 U.S.C § 115" and explaining "It's a federal crime to assault, kidnap, or murder—or threaten to do so—a federal law enforcement officer with the intent to impede, intimidate, or interfere with them in the performance of their official duties. This deals with the open organization of people to impede immigration[-]based investigations and operations. This is also a serious threat to law enforcement officer safety." Mcloughlin Decl. ¶ 4.[1]

On October 16, 2025, Movant initiated this action by filing a motion to quash the Summonses. Movant argues that the Summonses are outside of DHS's statutory authority and violate the First Amendment. The Court granted the parties stipulated briefing schedule and set the Motion hearing for January 8, 2026, at 1:30 p.m.

**III.  ARGUMENT**

Movant challenges the Summonses on two grounds, both of which fail. First, Movant argues that the Summonses must be quashed because they exceed DHS's statutory authority to issue summonses—which Movant argues is limited to investigating the importation of merchandise, duties, and taxes.

---

[1] Specifically, § 115 makes it a crime to "threaten[] to assault . . . a Federal law enforcement officer . . . with intent to impede, intimidate, or interfere with such . . . law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such . . . law enforcement officer on account of the performance of official duties[.]" 18 U.S.C. § 115(a)(1)(B).

However, Movant misreads the statute and misunderstands the breadth and nature of DHS authority to investigate and enforce immigration and customs laws, among others.

Next, Movant argues that the Summonses should be quashed, because they violate the First Amendment. But even assuming Movant's First Amendment rights are implicated, DHS's interest in law enforcement and investigating criminal threats to its agents outweigh Movant's First Amendment interests here. This conclusion is especially pertinent under the facts of this case because Respondent seeks only subscriber information; Movant's own substantive speech-related content thus is not implicated.

### A.   DHS Properly Issued the Summonses Pursuant to 19 U.S.C. § 1509

The scope of judicial review into an administrative subpoena is "narrow." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012); *FDIC v. Garner*, 126 F.3d 1138, 1142 (9th Cir. 1997). When the objecting party claims that an administrative subpoena exceeds statutory authority, the government must establish a prima facie showing that (1) Congress has granted the authority to investigate; (2) procedural requirements have been followed; and (3) the evidence is relevant and material to the investigation." *Garner*, 126 F.3d at 1142 (upholding summary enforcement of FDIC subpoena); *Golden Valley Elec. Ass'n*, 689 F.3d at 1113 (enforcing DEA subpoena for energy records as part of drug investigation) ; *Doe v. United States SEC*, No. 3:11-mc-80184 CRB (NJV), 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) [hereinafter *SEC I*] (denying motion to quash SEC administrative subpoena). An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met. *Garner*, 126 F.3d at 1143. Finally, "if the agency establishes these factors, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Garner*, 126 F.3d at 1143.

Here, DHS establishes: (1) the Summonses are well within DHS's law enforcement authority to issue summonses pursuant to 19 U.S.C. § 1509 to investigate the laws DHS administers; (2) the Summonses meet procedural requirements; and (3) the information sought is relevant to the investigation. Movant does not argue that the Summonses are overbroad or unduly burdensome, and that factor is thus met as well. Movant's motion to quash should be denied.

### 1.     DHS Has Statutory Authority To Issue the Summonses

DHS has the authority to issue the Summonses for the purpose of investigating a potential violation of 18 U.S.C. § 115. Specifically, 19 U.S.C. § 1509 provides HSI Special Agents with the authority to issue summonses to examine any record relevant to an investigation to ensure compliance with the laws DHS administers:

> In any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duty, fees and taxes due or duties, fees and taxes which may be due the United States, for determining liability for fines and penalties, or *for insuring compliance with the laws of the United States administered by the United States Customs Service* . . . [a special agent in charge] may examine, or cause to be examined, upon reasonable notice, any record (which for purposes of this section, includes, but is not limited to, any statement, declaration, document, or electronically generated or machine readable data) described in the notice with reasonable specificity, which may be relevant to such investigation or inquiry."

19 U.S.C. § 1509(a) (emphasis added). The Homeland Security Act of 2002 abolished the United States Customs Service, which had been part of the Department of Treasury, and transferred all functions (including authorities, powers, rights, programs) and personnel of the Customs Service to the Secretary of DHS. 6 U.S.C. § 203(1); 6 U.S.C. § 101(9), (16). These functions were then delegated to ICE "to accomplish the mission of ICE." *See* DHS Delegation Number 7030.2, *Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement* § 2(A) (Nov. 13, 2004); *United States v. Wilson*, 699 F.3d 235, 240 n.2 (2d Cir. 2012).

As an investigation component of ICE within DHS, HSI is empowered with the authority of immigration officers and the authority of customs officers. *See* 19 U.S.C. § 1401(i) (a customs officer is "any agent or other person . . . authorized by law or designated . . . to perform any duties of an officer of the Customs Service."); 8 U.S.C. § 1101(a)(18) (an immigration officer is "any employee . . . of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer").

HSI Special Agents are authorized to investigate numerous laws, including civil, criminal, and immigration laws, and they have been granted the tools—including § 1509—to carry out these investigations. *See, e.g.*, 19 U.S.C. § 1509 (power to subpoena records for investigation into violation of laws), 19 U.S.C. § 1589a(2) (power to "execute and serve any order, warrant, subpoena, summons, or

other process issued under the authority of the United States"). Indeed, HSI's broad authority is reflected in its authorization to make arrests as immigration officers and customs officers for "any felony cognizable under the law of the United States." *See, e.g.*, 8 U.S.C. § 1357(a)(5)(B); 19 U.S.C. § 1589a(3) (same).

Although § 1509 references "duties, fees, and taxes," the plain language of the statute does not limit DHS's investigative authority to those subjects; instead, DHS is authorized to investigate potential crimes to insure "compliance with the laws of the United States administered by the United States Customs Service[.]" 19 U.S.C. § 1509(a). Indeed, another District Court in this Circuit rejected the argument that a customs summons "may only be used for investigations ensuring compliance with customs laws such as the collection of duties, fees, and taxes," holding that "the plain language of § 1509" grants ICE the authority "to issue summonses for records that may be relevant to any investigation conducted to ensure compliance with the laws that the Customs Service administers." *United States v. Barnes*, No. CR18-5141, 2019 WL 2515317, at *6 (W.D. Wash. June 18, 2019) (denying motion to suppress evidence and holding HSI had authority to issue § 1509 summons for subscriber information from Comcast pertaining to a user suspected of violating child exploitation laws), *aff'd*, 2021 WL 4938126 (9th Cir. Oct. 22, 2021), *cert. denied,* 142 S. Ct. 2754 (2022).

HSI has historically utilized customs summonses in a wide variety of investigations which customs officers have the authority to conduct, such as child exploitation and money laundering. *See, e.g.*, *United States v. Marbelt*, 129 F. Supp. 2d 49, 53 (D. Mass. 2000) (holding customs agents are authorized to investigate violations of money laundering); *United States v. Merrell*, 88 F. Supp. 3d 1017, 1033 (D. Minn. 2015), *aff'd*, 842 F.3d 577 (8th Cir. 2016) (explaining ICE properly issued a customs summons in a child exploitation investigation because it is tasked with investigating 18 U.S.C. § 2251, sexual exploitation of children); *United States v. Wellbeloved-Stone*, No. 3:17-cr-00014, 2018 WL 1973286 (W.D. Va. Apr. 26, 2018), aff'd, 777 F. App'x 605 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 876 (2020); *United States v. McLean*, No. SA–09–CR–270, 2010 WL 376381 (W.D. Tex. Jan. 25, 2010), *aff'd,* 419 F. App'x 473 (5th Cir. 2011) (explaining that ICE was authorized to issue a customs summons in a child pornography investigation because it is "charged with insuring [sic] compliance with child exploitation laws"); *United States v. Cray*, 673 F. Supp. 2d 1368, 1376-77 (S.D. Ga. 2009) (upholding ICE's use of a customs summons in an investigation into the importation of child pornography).

Movant also attempts to limit HSI's authority here, by arguing that the definition of "records" in § 1509(d)(1)(A), which includes records "regarding which there is probable cause to believe that they pertain to merchandise the importation of which into the United States is prohibited," limits HSI to only merchandise records. This is also wrong. DHS issued the Summonses pursuant to § 1509(a)(1), which authorizes HSI to "examine . . . any record . . . which for purposes of this section, includes, but is not limited to, any statement, declaration, document, or electronically generated or machine readable data." 19 U.S.C. § 1509(a)(1) . Because § 1509(a)(1) provides its own definition of records, this section is not tied to the narrower definition of records in § 1509(d)(1)(A).

In two sentences, Movant also claims that disclosure would violate the Electronic Communications Privacy At of 1986, 18 U.S.C. § 2702(a)(3). Mot. 11.[2] Not so. "There is no provision in the ECPA allowing a customer whose non-content records are being sought to prevent disclosure." *SEC I*, 2011 WL 4593181, at *2.

Accordingly, HSI has the statutory authority to investigate potential threats to the safety of DHS agents and efforts to impede ICE agents' performance of their duties, including possible violations of 18 U.S.C. § 115.

### 2.     The Summonses Are Procedurally Proper

Movant does not contend that the Summonses were procedurally deficient, nor could it. Section 1509(a) provides that "no delegate of the Secretary below the rank of . . . special agent in charge" may issue a customs summons. 19 U.S.C. § 1509(a). This requirement was met here, because Section 6 of each summons indicates that the "Special Agent in Charge" issued the summons. *See* Doe Decl. Exs. A-B.

Section 1509(c) provides that a customs summons "may be served by any person designated in the summons to serve it" and "[s]ervice may be made upon a domestic or foreign corporation . . . by delivering the summons to an officer, or managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." 19 U.S.C. § 1509(c). These requirements were met here, because Section 4 of each summons designates an HSI Special Agent to serve the summons, and that Special Agent

---

[2] Unless otherwise indicated, Respondent refers to the ECF page number of the Motion.

served the Summonses. In addition, the Summonses were served upon Meta via Meta's Law Enforcement Online Request System—which, per Meta's guidelines for law enforcement authorities, is one of the ways Meta accepts legal process from law enforcement authorities. *See* Information for law enforcement authorities, Meta Safety Center, https://www.meta.com/safety/communities/law/guidelines/ (last visited Dec. 2, 2025). Thus the procedural requirements of § 1509 have been met.

### 3.     The Information Sought Is Relevant to the Investigation

"[W]hen assessing the validity of an agency subpoena, the notion of relevancy is a broad one. An administrative subpoena will survive a relevancy challenge as long as the information requested touches a matter under investigation." *See SEC I*, 2011 WL 4593181, at *6. Indeed, the investigative agency does not need to offer "admissible evidence that the owner of the [account] . . . is related to its investigation. . . . [The agency] only need show that the information it seeks is relevant to its investigation of a potential violation." *Id*.

In *SEC I*, the SEC sought subscriber information from Google related to an email address, after the SEC had "obtained information indicating that the email address [] potentially belongs to a touter in the [] scheme it was investigating"—a fact the SEC established in a sworn declaration. *Id*. at *5. The court held that the SEC had met its burden because the identity of a potential "touter" of a securities scheme under investigation "touches" the investigation and was therefore relevant. *Id*. at *6.

So too here, DHS has established in a sworn declaration that it issued the Summonses "after receiving information concerning the stalking and gathering of intelligence on federal agents involved in ICE operations, among other allegations." McLoughlin Decl. ¶ 2. DHS further established that it is investigating a potential violation of 18 U.S.C § 115, pursuant to which "[i]t's a federal crime to assault, kidnap, or murder—or threaten to do so—a federal law enforcement officer with the intent to impede, intimidate, or interfere with them in the performance of their official duties. This [investigation] deals with the open organization of people to impede immigration[-]based investigations and operations. This is also a serious threat to law enforcement officer safety." McLoughlin Decl. ¶ 4.

DHS's burden is thus met, because the identity of a potential violator of 18 U.S.C § 115, *i.e.*, someone who is allegedly involved in threatening ICE agents and impeding the performance of their

duties, touches DHS's investigation into threats to ICE agents and impediments to the performance of their duties. The subscriber information sought by the Summonses is therefore relevant.

Because the Summonses are within DHS statutory authority, they were properly issued, and the information sought is relevant to DHS's investigation, the government has shown that the Summonses are valid and the motion to quash should be denied.

### B.  The First Amendment Does Not Bar Disclosure

Movant's First Amendment argument falls flat because, in this case, the government's compelling interest in law enforcement prevails. The Ninth Circuit applies a burden-shifting framework when a party challenges an administrative subpoena issued during an investigation for violating the First Amendment. *See Dole v. Service Employees Union, etc., Local 280*, 950 F.2d 1456, 1459-1460 (9th Cir. 1991); *Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 350 (9th Cir. 1988). Under this framework, the objecting party "must make a prima facie showing of arguable first amendment infringement." *Doe v. U.S. S.E.C.*, No. C 11-80209 CRB, 2011 WL 5600513, at *2 (N.D. Cal. Nov. 17, 2011) [hereinafter *SEC II*]. Once the objecting party establishes a prima facie case, the burden shifts to the government to show "(1) that the information sought is rationally related to a compelling governmental interest, and (2) that the government's disclosure requirements are the least restrictive means of obtaining the desired information. [The Court] is willing to tolerate some chilling effect if it is necessary to do so in order to protect a compelling governmental interest." *Dole*, 950 F.2d at 1461. This framework acknowledges that Congress recognizes the need for government agencies to investigate wrongdoing and accordingly has granted these agencies investigatory powers that are not available to civil parties. *SEC I*, 2011 WL 4593181, at *3 (distinguishing test articulated in *Highfields Capital Mgmt. LP v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005), which applies in civil cases between private parties).

**1. Movant Has Failed To Show How Disclosing Non-Content Subscriber Information Implicates the First Amendment Here**

Movant claims that the Summonses infringe his First Amendment rights to post anonymously, to criticize the government, to record law enforcement, to publish the identity of law enforcement, and to associate with others. Mot. at 19-24. However, the Summonses do not seek the content of Movant's social media accounts—which are publicly available—or demand that Movant stop or change his social media accounts in any way. Respondents seek only non-content subscriber information such as name and IP addresses, which does not impact Movant's ability to continue to create content. This distinction matters because, in the context of valid government investigations, courts have held that non-content "identifying information is not subject to First Amendment (or Fourth Amendment) protection." *SEC I*, 2011 WL 4593181, at *6 (citing *Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988) (rejecting argument that disclosing identifying information related to email address would prevent individual from participating in anonymous political speech). Movant has failed to address how disclosing only the subscriber information in Meta's possession implicates the First Amendment here.

To the extent Movant claims infringement of his First Amendment right to associate with others, Movant must also "demonstrate that disclosure will result in: (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights. The record must contain objective and articulable facts, which go beyond broad allegations or subjective fears." *Dole*, 950 F.2d at 1459-1460 (internal citations and quotations omitted). But Movant has failed to provide *any* objective articulable facts—beyond broad allegations or subjective fears—demonstrating that disclosing his user information would cause any of the above associational harms. Movant's brief subjective statements that he fears "harassment, detention, and persecution" if his identity is revealed are insufficient and irrelevant, to the extent his fears are not tied to his ability to associate with others or for others to associate with him. Mot. at 28.

However, even assuming Movant met his burden and established infringement, the government's interest weighs in favor of disclosure.

### 2. The Government's Interest Prevails

There is "little doubt" that the purpose of investigating a possible violation of the law serves the compelling government interest of law enforcement. *Dole*, 950 F.2d at 1461 (reviewing union records is rationally related to compelling government interest of investigating possible misuse of funds); *SEC II*, 2011 WL 5600513, at *4 ("The identity of a suspected violator of federal securities laws 'touches' the SEC's Jammin Java investigation and is thus relevant to the compelling governmental interest of law enforcement."). That compelling interest is ever-present here, where DHS suspects that Movant or his accounts may be involved in efforts to impede the performance of DHS duties and criminal threats to its agents.

For the same reasons, Movant's argument that there is no "nexus" between his identity and DHS's investigation fails. Mot. 24 (citing *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963)). In *Gibson*, the president of the NAACP was held in contempt for failing to provide the Florida legislative investigation committee (the "Committee") membership information for the NAACP's Miami branch for the Committee's purpose of investigating subversive communist activity. The Supreme Court reversed, holding that the Committee failed to show a nexus between its interest and the NAACP, a concededly legitimate and nonsubversive organization. *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 547-548 (1963). The Court distinguished cases—more like this one—where the individual or organization under investigation was suspected of engaging in communist activity. *Id*. Here, Movant is the individual suspected of a possible crime (not Meta), and his subscriber information is thus relevant to the government's investigation. Accordingly, *Gibson's* nexus test is met here.

Indeed, courts have applied statutes like 18 U.S.C. § 115 in a way that recognizes the power of the internet to transform a rash statement into a real reason for its target to have concern about their safety. *See, e.g.*, *People v. Shivers*, 186 Cal. Rptr. 3d 352, 357 (Ct. App. 2015) (sustaining conviction of a defendant under Cal. Pen. Code § 653.2 who published tweets about his ex-wife, falsely accusing her of threatening him, while encouraging people to call the police on her, and holding that defendant's intent could be ascertained from circumstantial evidence—including the nature of publishing public messages on a social media website—and therefore he should have reasonably known that his posts "were likely to incite" others to contact, and potentially harm, his ex-wife).

Further, Respondent has pursued the least restrictive means of pursuing that interest by requesting only subscriber information and not content or communications. *See SEC II*, 2011 WL 5600513, at *4 ("By only requesting Doe's identifying information and the limited communications between Google and Doe, the SEC has pursued the least restrictive means of pursuing that governmental interest."); *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *7 (N.D. Cal. Aug. 22, 2013) (drawing distinction between subpoenas seeking content and those that seek non-content subscriber information, which is afforded less protection).

### 3. Movant's Arguments Are Inapposite

Contrary to Movant's assertions, Mot. at 24, 26, Respondent does not need to establish a prima facie case of the merits of an underlying claim to win disclosure. *See Highfields Capital Mgmt. LP v. Doe*, 385 F.Supp.2d 969, 970-71 (N.D. Cal. 2005). The *Highfields* test is inapplicable here. *See, e.g.*, *SEC I*, 2011 WL 4593181, at *2 (declining to apply *Highfields* in case involving request for identity behind an email address). *Highfields* involved a defamation suit between private parties. Since there was no government party in *Highfields*, there was no government interest—let alone the compelling law enforcement interest present here—weighing in favor of disclosure. Further, there is no "underlying claim" in this case, so Respondent need not show the merits of an underlying civil claim to prevail.

Movant also incorrectly relies on cases pulled from vastly different contexts. For example, Movant claims to stand on the same footing as newspapers and journalists who were criminally prosecuted for information they published. Mot. 21-22 (citing *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 99 (1979) (involving First Amendment challenge to statute punishing publication of an alleged juvenile delinquent's name); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) (involving First Amendment challenge to statute punishing publication of name of rape victim); *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244, 1249 (N.D. Fla. 2010) (involving First Amendment challenge to statute punishing the publication of certain information)). But Movant has not challenged the constitutionality of 18 U.S.C. § 115, here, and the government is not asking Movant to stop publishing information. The government is merely seeking non-content information to investigate the potential violation of a statute.

### IV. CONCLUSION

For the foregoing reason, this Court should deny Movant's Motion.

|   |   |   |
|---|---|---|
| 1 |   | Respectfully Submitted, |
| 2 |   | CRAIG H. MISSAKIAN<br>United States Attorney |
| 3 |   |   |
| 4 | DATED: December 3, 2025 | */s/ Sarah E. Balkissoon* |
| 5 |   | SARAH E. BALKISSOON<br>Assistant United States Attorney |
| 6 |   |   |
| 7 |   | Attorneys for Defendant |