Stephen A. Loney, Jr. (admitted *pro hac vice*)
Ari Shapell (admitted *pro hac vice*)
Keith Armstrong (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
Telephone: (215) 592-1513
sloney@aclupa.org
ashapell@aclupa.org
karmstrong@aclupa.org

Jacob Snow (CA Bar No. 270988)
Matthew T. Cagle (CA Bar No. 286101)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
jsnow@aclunc.org
mcagle@aclunc.org

Jonathan H. Feinberg (admitted *pro hac vice*)
KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN, LLP
718 Arch St. Suite 501 South
Philadelphia, PA 19106
Telephone: (215) 925-4400
jfeinberg@krlawphila.com

Seth Kreimer (admitted *pro hac vice*)
3501 Sansom St.
Philadelphia, PA 19104
Telephone: (215) 898-7447
skreimer@law.upenn.edu

Caitlin Barry (admitted *pro hac vice*)
Villanova University
Charles Widger School of Law
299 N. Spring Mill Rd.
Telephone: (610) 519-3216
caitlin.barry@law.villanova.edu

*Attorneys for Movant*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In the Matter of Summonses Number HSI-PH-2025-082814-001 & HSI-PH-2025-082819-001:*<br><br>J. DOE,<br><br>     Movant,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>     Respondent. | Misc. Case No. 3:25-mc-80325-PHK<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES UNDER EAJA AND RULE 45(d)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date: March 12, 2026<br>Time: 1:30PM<br>Courtroom: F, 15th Floor<br><br>Hon. Peter H. Kang |

## NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES

PLEASE TAKE NOTICE that on March 12, 2026, at 1:30PM, or as soon as the matter may be heard before the Honorable Peter H. Kang, Movant moves for the recovery of attorneys' fees and costs in the amount of $92,984.18 pursuant to 28 U.S.C. § 2412, the Equal Access to Justice Act ("EAJA"), and Rule 45(d)(1) of the Federal Rules of Civil Procedure. This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, concurrently filed declarations and exhibits, all pleadings and papers on file, and any other arguments and evidence that may be presented.

In compliance with Local Rule 54-5(b)(1), Movant, through counsel, states that counsel for the parties exchanged several emails between February 2 and February 10, 2026, and spoke by phone on February 9, 2026, for the purpose of attempting to resolve any disputes with respect to this motion. While Respondent expressed a willingness to discuss a resolution to this matter, Respondent would not agree that Movant was entitled to attorneys' fees, and the parties were unable to reach a resolution as the deadline for filing this motion under Local Rule 54-5(a) neared.

## STATEMENT OF RELIEF REQUESTED

Movant seeks an award of fees and costs as a prevailing party under EAJA and as a party subject to undue burden or expense under Rule 45(d)(1) of the Federal Rules of Civil Procedure in the amount of $92,984.18 ($91,626.50 in fees; $1,357.68 in costs).

## MEMORANDUM OF POINTS AND AUTHORITIES TO BE DECIDED

### STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Movant is entitled to an award of fees and costs in the amount of $92,984.18 as a prevailing party under EAJA?

2. Whether Movant is entitled to an award of fees and costs in the amount of $92,984.18 as a party subject to undue burden or expense under Rule 45(d)(1) of the Federal Rules of Civil Procedure?

1

**TABLE OF CONTENTS**

2

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES .................................................. 2

STATEMENT OF RELIEF REQUESTED .................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES TO BE DECIDED ........................................... 2

STATEMENT OF THE ISSUES TO BE DECIDED .................................................. 2

INTRODUCTION .................................................. 7

BACKGROUND .................................................. 9

I.    The MontCo Community Watch Accounts .................................................. 9

II.    DHS Hostility to First Amendment-Protected Advocacy .................................................. 9

III.    DHS Issues the Summonses to Meta .................................................. 10

IV.    Movant and DHS Litigate Movant's Motion to Quash .................................................. 11

ARGUMENT .................................................. 12

I.    Movant is Entitled to Attorneys' Fees Under EAJA. .................................................. 12

a.    Movant is a Prevailing Party. .................................................. 13

b.    Neither Respondent's Basis for Issuing the Summonses Nor Its Legal Positions in Opposing the Motion to Quash Were Substantially Justified. .................................................. 14

i.    Respondent's Issuance of the Summonses was not Substantially Justified. .................................................. 15

1.    The Summonses are not authorized under 19 U.S.C. § 1509. .................................................. 15

2.    ECPA Bars Meta from Complying with the Summonses. .................................................. 16

3.    The Summonses violate Movant's First Amendment Rights. .................................................. 17

ii.    Respondent's Positions in Opposing the Motion to Quash were not Substantially Justified. .................................................. 19

c.    Movant Seeks Reasonable Fees and Costs. .................................................. 21

i.    Movant Claims a Reasonable Number of Hours. .................................................. 22

ii.    Movant's Attorneys Are Entitled to Enhanced Rates. .................................................. 23

iii.    Movant is Entitled to Recover Out-Of-Pocket Costs. .................................................. 24

II.    Movant is Entitled to Attorneys' Fees Under Rule 45(d)(1). .................................................. 24

CONCLUSION .................................................. 26

# TABLE OF AUTHORITIES

**Cases**

Ams. for Prosperity Found. v. Bonta,
   594 U.S. 595 (2021) ............................................................................................ 18

Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.,
   No. 16-MC-80076-JSC, 2017 WL 446316 (N.D. Cal. Feb. 2, 2017) ................... 25

Bickley v. CenturyLink, Inc., No. CV 15-1014-JGB,
   2016 WL 9046911 (C.D. Cal. Nov. 29, 2016) ..................................................... 24

Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Hum. Res.,
   532 U.S. 598 (2001) ............................................................................................ 13

Buckley v. Valeo,
   424 U.S. 1 (1976) ................................................................................................ 18

Carbonell v. I.N.S.,
   429 F.3d 894 (9th Cir. 2005) ............................................................................... 14

Commissioner, I.N.S. v. Jean,
   496 U.S. 154, 158 (1990) ...................................................................................... 8

Costa v. Comm'r of SSA,
   690 F.3d 1132 (9th Cir. 2012) ............................................................................. 23

Cruceta v. City of New York,
   No. 10-5059, 2012 WL 2885113, at *4 (E.D.N.Y. Feb. 7, 2012) ........................ 22

Dennis v. Chang,
   611 F.2d 1302 (9th Cir. 1980) ............................................................................. 23

Doe v. DHS,
   No. 25-mc-80284, (N.D. Cal. Sep. 18, 2025) ..................................................... 10

Doe v. United States SEC,
   No. 3:11-mc-80184, 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) ...................... 20

Doe v. United States SEC,
   No. 3:11-mc-80209, 2011 WL 5600513 (N.D. Cal. Nov. 17, 2011) .................... 20

Doe/LBRRN v. DHS,
   No. 25-mc-80288-AGT, (N.D. Cal. Sep. 19, 2025) ............................................ 10

Hensley v. Eckerhart,
   461 U.S. 424 (1983) ............................................................................................ 22

Ibrahim v. U.S. Dep't of Homeland Sec.,
   912 F.3d 1147 (9th Cir. 2019) .................................................................. 8, 12, 13

In re AT&T Non-Disclosure Order,
   No. 25-MR-1769, 2025 WL 3079326 (D. N. M. Nov. 4, 2025) ..................... 16, 17

In re Subpoena No. 25-1431-014,
   No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ............................. 19

In the Matter of Subpoena Number FY25-ELC-0105: Doe v. DHS,
   No. 3:25-mc-80286, (N.D. Cal. Sep. 18, 2025) .................................................. 10

Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan,
   792 F.2d 762 (9th Cir. 1985) ............................................................................... 24

Legal Voice v. Stormans Inc.,
   738 F.3d 1178 (9th Cir. 2013) ............................................................................. 25

Maldonado v. Houstoun,
    256 F.3d 181, 187 (3d Cir. 2001) ............................................................................ 23
McAllister v. St. Louis Rams, LLC,
    No. 2:17-MC-157-AB (KSX), 2018 WL 6164281 (C.D. Cal. July 2, 2018) ...................... 25
Meier v. Colvin,
    727 F.3d 867 (9th Cir. 2013) ............................................................................ 15, 19
Meza-Vazquez v. Garland,
    993 F.3d 726 (9th Cir. 2021) .................................................................................. 15
MP ex rel. VC v. Parkland Sch. Dist.,
    No. 5:20-cv-4447, 2021 WL 5177012, at *2 (E.D. Pa. Nov. 5, 2021) ........................... 23
Nat. Res. Def. Council, Inc. v. Winter,
    543 F.3d 1152 (9th Cir. 2008) ................................................................................ 23
Nat'l Family Farm Coal. v. EPA,
    29 F.4th 509 (9th Cir. 2022) .................................................................................. 24
Pa. v. Del. Valley Citizens Council for Clean Air,
    478 U.S. 546 (1986) ............................................................................................. 22
Pierce v. Underwood,
    487 U.S. 552 (1988) ............................................................................................. 23
Richard S. v. Dep't of Developmental Servs.,
    317 F.3d 1080 (9th Cir. 2003) ........................................................................... 13, 14
Shadis v. Beal,
    692 F.2d 924, 927 (3d Cir. 1982) ............................................................................ 22
Thomas v. Peterson,
    841 F.2d 332 (9th Cir. 1988) .................................................................................. 14
United States v. Google LLC,
    690 F. Supp. 3d 1011 (N.D. Cal. 2023) ..................................................................... 18
United States v. Marolf,
    277 F.3d 1156  (9th Cir. 2002) ............................................................................... 19
United States v. Powell,
    379 U.S. 48 (1964) ............................................................................................... 19
Ward v. Thompson,
    No. 22-16473, 2022 WL 14955000 (9th Cir. Oct. 22, 2022) ......................................... 18
Yates v. United States,
    574 U.S. 528 (2015) ............................................................................................. 16

**Statutes**

18 U.S.C. § 115 ......................................................................................................... 8

18 U.S.C. § 2702 ..................................................................................................... 18

18 U.S.C. § 2703 ..................................................................................................... 18

18 U.S.C. §§ 2701–2713 ........................................................................................... 17

19 U.S.C. § 1508 ..................................................................................................... 17

19 U.S.C. § 1509 ........................................................................................ 8, 16, 17, 26

28 U.S.C. § 2412 ................................................................................................ passim

1

**Other Authorities**

C.J. Ciaramella, DHS Says Recording or Following Law Enforcement 'Sure Sounds Like Obstruction of Justice', Reason (Dec. 22, 2025), https://reason.com/2025/12/22/dhs-says-recording-or-following-law-enforcement-sure-sounds-like-obstruction-of-justice ..................................................... 11

Grace Bellinghausen, Secretary Kristi Noem addresses surge in attacks on ICE agents in Tampa, WBMA (Jul. 13, 2025), https://abc3340.com/news/nation-world/secretary-kristi-noem-addresses-surge-in-attacks-on-ice-agents-in-tampa-dhs-us-immigration-and-customs-enforcement-agents-florida-department-of-homeland-security-july-13-2025 ........................................................ 10

Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509, DHS: Office of Inspector General (Nov. 16, 2017) ............................................... 17, 22

Matthew Cunningham-Cook, DHS Claims Videotaping ICE Raids Is 'Violence', The American Prospect (Sep. 9, 2025), https://prospect.org/2025/09/09/2025-09-09-dhs-claims-videotaping-ice-raids-is-violence ..................................................................................... 11

Walter Olson, DHS Says Videotaping ICE Agents Is Illegal. Federal Courts Disagree. Cato Institute (Oct. 9, 2025) https://www.cato.org/commentary/dhs-says-videotaping-ice-agents-illegal-federal-courts-disagree ..................................................................................... 11

**Rules**

Fed. R. Civ. P. 45 ............................................................................................. 2, 8, 9, 26

## INTRODUCTION

Movant, through counsel, moves the Court to grant them an award of fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), and Rule 45(d)(1) of the Federal Rules of Civil Procedure for time reasonably expended by counsel to address the Department of Homeland Security's ("DHS's") invalid, abusive, and unduly burdensome administrative subpoenas. Movant operates the "MontCo Community Watch" Facebook and Instagram accounts, which document public immigration enforcement activity in Montgomery County, Pennsylvania, and share content embodying Movant's personal moral and political commitments to immigrants' rights. In a climate in which DHS officials have demonstrated a growing hostility towards constitutionally-protected speech critical of immigration enforcement operations, Movant operates these accounts anonymously due to fear of government retribution. Movants fears were justified: On September 11, 2025, Respondent issued two administrative Summonses to Meta Platforms, Inc. ("Meta") seeking to unmask the identities of the users behind the MontCo Community Watch Facebook and Instagram accounts.

Respondent lacked any basis, in fact or in law, for issuing the Summonses in the first instance, let alone any basis to force Movant to fight them in court. The Summonses exclusively cited a federal statute, 19 U.S.C. § 1509, that only authorizes customs investigations relating to merchandise. But the MontCo Community Watch accounts have nothing to do with commerce and do not import anything. DHS does not claim otherwise. After Movant filed a Motion to Quash on October 16, 2025, Respondent revealed that the Summonses were issued not to investigate activity even tangentially related to commerce or importation, but to investigate an imagined violation of the criminal law, 18 U.S.C. § 115, which addresses assaults, kidnappings, or murders of certain federal officials, or conspiracies, threats, or attempts to do so, with the intent to impede such official's performance of official duties. Even so, Respondent offered no information to support its assertion that Movant's constitutionally-protected operation of the MontCo Community Watch accounts related in any way to a violation of any criminal law, much less one involving threats to assault, kidnap, or murder federal agents. And Respondent proved unable to identify any support for the assertion that DHS had the authority to issue the Summonses to administer or enforce the cited criminal law.

Despite their patent legal and factual insufficiencies, Respondent chose to prolong the proceedings

on Movant's Motion to Quash, rather than withdrawing the Summonses (as DHS did when faced with similar objections to other similar "unmasking" subpoenas). Respondent continued to litigate the Motion to Quash for three months, forcing Movant to expend resources seeking an order from this Court that would protect Movant's First Amendment rights. Only after a hearing before this Court on January 14, 2026—in which Respondent took numerous unsupportable positions in defense of the Summonses—did Respondent withdraw the Summonses, presumably after concluding that this Court was poised to describe the unlawful and abusive nature of their conduct in a written order.

Having been forced to devote substantial resources to challenging the Summonses, which were unduly burdensome and for which Respondent lacked substantial justification, Movant is entitled to fees under both EAJA and Rule 45(d)(1) of the Federal Rules of Civil Procedure. EAJA entitles litigants that meet certain net worth requirements to recover reasonable attorneys' fees and costs from the federal government if they are a "prevailing party", the government fails to show that its position was "substantially justified," and no "special circumstances make an award unjust." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (quoting *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)). Movant is entitled to reasonable fees and costs under EAJA as a prevailing party, because the Court's January 28, 2026, order memorializing the parties' stipulated dismissal materially altered the parties' legal relationship. That order granted Movant the relief they had requested in their Motion to Quash—that is, Respondent withdrawing the Summonses—as well as Respondent agreeing in a judicially enforceable order not to issue materially similar subpoenas in the future. Additionally, fees and costs under EAJA are available because Respondent failed to take substantially justified positions in: (1) issuing the Summonses without statutory authority to chill Movant's First Amendment rights; and (2) defending against the Motion to Quash for three months despite the plainly unlawful nature of the Summonses. Similarly, Movant is entitled to fees and costs under Rule 45(d)(1) of the Federal Rules of Civil Procedure, which required Respondent to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Respondent failed to take such reasonable steps by issuing the Summonses in bad faith, for the improper purpose of chilling Movant's constitutional rights, and in a manner inconsistent with existing law, by attempting to use Section 1509 to seek records wholly unrelated to commerce. For these reasons, and others discussed in this Motion, Movant respectfully requests its

reasonable fees and costs under EAJA and Rule 45(d)(1) of the Federal Rules of Civil Procedure.

## BACKGROUND

### I.     The MontCo Community Watch Accounts

Through the anonymous MontCo Community Watch Facebook and Instagram accounts, Movant spreads awareness of immigration enforcement activity in Montgomery County, Pennsylvania, and to share alerts, documentation, and resources to help inform both the immigrant and non-immigrant communities within Montgomery County of the rights, due process, and the humanity of their neighbors. Dkt. No. 1–2 ("Doe Decl.") at ¶ 4. These accounts provide information about, among other things, where agents are publicly conducting immigration enforcement activities within Montgomery County.[1] In addition, Movant posts content to the Facebook and Instagram accounts that reflects Movant's personal political and moral beliefs regarding the rights and value of the Montgomery County immigrant community. Doe Decl at ¶ 8. These accounts are designed to shine a light on government activity and events of public concern in the community. *Id.* at ¶¶ 4–9. The content that appears in the accounts' feeds includes both content that Movant creates and content that they repost as part of a curated feed that the accounts' followers can see. *Id.*

### II.    DHS Hostility to First Amendment-Protected Advocacy.

At its highest levels, DHS officials have revealed an agency-wide intent to weaponize criminal and administrative law to intimidate people engaging in protected activities, such as taking pictures or video of ICE officers or posting such media online, asserting that such long-established First Amendment activity somehow constitutes illegal harassment or "violence."[2] Two days before DHS issued the Summonses here, DHS's Assistant Secretary for Public Affairs was reported as stating that "videotaping ICE law enforcement and posting photos and videos of them online is doxing our agents," and "[w]e will

---

[1] The accounts do not provide non-public identifying information about the individual agents conducting these activities.

[2] Grace Bellinghausen, *Secretary Kristi Noem addresses surge in attacks on ICE agents in Tampa,* WBMA (Jul. 13, 2025), https://abc3340.com/news/nation-world/secretary-kristi-noem-addresses-surge-in-attacks-on-ice-agents-in-tampa-dhs-us-immigration-and-customs-enforcement-agents-florida-department-of-homeland-security-july-13-2025 (In July 2025, DHS Secretary Kristi Noem announced that "[v]iolence is anything that threatens [ICE officers] and their safety," including "videotaping them where they're at when they're out on operations").

prosecute those who illegally harass ICE agents to the fullest extent of the law."[3] And more recently, the DHS's Office of Public Affairs again stated that following or recording a federal law enforcement officer "sure sounds like obstruction of justice" in response to which "we will hunt you down and you will be prosecuted …."[4]

In addition to "informally 'enforcing' their disapproval of at-the-scene recording by shoving, beating and even shooting … journalists, freelance photographers, and others with cellphone cameras,"[5] DHS is openly targeting people anonymously sharing videos and photos of ICE activity online. One week before DHS issued the Summonses, it issued an administrative "Immigration Enforcement Subpoena" to Meta seeking to unmask six other Instagram accounts, at least three of which were publishing or reposting content critical of DHS's activity in Los Angeles.[6] After account holders filed motions to quash the subpoena, asserting First Amendment arguments, DHS withdrew the subpoena targeting those accounts.[7]

## III.    DHS Issues the Summonses to Meta.

On September 11, 2025, Meta received two documents labeled "Summons" from DHS citing to 19 U.S.C. § 1509. Doe Decl.; Dkt. Nos. 1-3, 1-4. The Summonses demanded that records be produced "[p]ursuant to an investigation being conducted by U.S. Department of Homeland Security, Homeland Security Investigations[.]" *Id*. The Summonses specifically sought: "the identity of the [MontCo Community Watch accounts'] user, consisting of name, postal code, country, all email address(es) on file,

---

[3] Matthew Cunningham-Cook, *DHS Claims Videotaping ICE Raids Is 'Violence'*, THE AMERICAN PROSPECT (Sep. 9, 2025), https://prospect.org/2025/09/09/2025-09-09-dhs-claims-videotaping-ice-raids-is-violence/.

[4] C.J. Ciaramella, *DHS Says Recording or Following Law Enforcement 'Sure Sounds Like Obstruction of Justice'*, REASON (Dec. 22, 2025), https://reason.com/2025/12/22/dhs-says-recording-or-following-law-enforcement-sure-sounds-like-obstruction-of-justice/.

[5] Walter Olson, *DHS Says Videotaping ICE Agents Is Illegal. Federal Courts Disagree.* CATO INSTITUTE (Oct. 9, 2025) https://www.cato.org/commentary/dhs-says-videotaping-ice-agents-illegal-federal-courts-disagree.

[6] *E.g.*, J. Doe's Motion to Quash Administrative Subpoena, *In the Matter of Subpoena Number FY25-ELC-0105: Doe v. DHS*, No. 3:25-mc-80286, (N.D. Cal. Sep. 18, 2025), Dkt. No. 1  (Motion to quash filed by a Doe associated with a targeted account); *Doe/LBRRN v. DHS*, No. 25-mc-80288-AGT, (N.D. Cal. Sep. 19, 2025), Dkt No. 1 (same for a second Doe); *Doe v. DHS*, No. 25-mc-80284, (N.D. Cal. Sep. 18, 2025), Dkt No. 1  (same for third Doe).

[7] Stipulation of Dismissal Pursuant to Rule 41(a)(1)(A)(ii), Nos. 3:25-mc-80284, 3:25-mc-80286, 3:25-mc-80288 (N.D. Cal. Dec. 8, 2025).

---

date of account creation, registered telephone numbers, IP address at account sign up, and logs showing IP address and date stamps for account accesses from 02/01/2025 to the present." *Id*.

Neither the government nor Meta informed Movant of these Summonses before the original return date reflected on their face. According to Respondent's submissions in this litigation, someone from Meta asked Respondent about the basis for the Summonses, and someone from DHS's Homeland Security Investigations responded by referencing 18 U.S.C. § 115. Dkt. No. 28-1. Meta apparently did not press further and did not file any motions in relation to the Summonses. Instead, on October 3, 2025, Meta notified Movant via e-mail that unless "[Meta] receive[s] a copy of documentation that [Movant has] filed in court challenging this legal process," by October 13, 2025, it "will respond to the requesting agency with information about the requested [] account[s]." Doe Decl. at ¶ 10.

**IV.    Movant and DHS Litigate Movant's Motion to Quash.**

On October 16, 2025, Movant filed the Motion to Quash in the United States District Court for the Northern District of California seeking an order quashing the Summonses in their entirety. Dkt. No. 1 ("Motion to Quash"). The following day, this Court ordered "Meta (including its officers, directors, employees, agents, and those acting under the control of or in concert with Meta) not to produce any documents or information in response to the summonses at issue here without further order of the Court," pending resolution of the Motion to Quash. Dkt. No. 3 at 3. Both parties subsequently briefed their positions on the Motion to Quash. Dkt. No. 28; Dkt. No. 30. With its brief, Respondent submitted a barebones declaration from Eric D. McLoughlin, "Special Agent in Charge (SAC) for the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) in Philadelphia, Pennsylvania." Dkt. No. 28-1 at ¶ 1. Mr. McLoughlin stated only that HSI "receiv[ed] information concerning the stalking and gathering of intelligence on federal agents" and referenced the following rationale for the Summonses:

4.  On September 26, 2025, after additional correspondence from Meta, HSI responded to Meta by citing "18 U.S.C § 115" and explaining "It's a federal crime to assault, kidnap, or murder—or threaten to do so—a federal law enforcement officer with the intent to impede, intimidate, or interfere with them in the performance of their official duties. This deals with the open organization of people to impede immigration[-]based investigations and operations. This is also a serious threat to law enforcement officer safety."

5.  The information HSI sought from Meta is relevant to an investigation within HSI's mission and investigative authority.

*Id.* at ¶ 4-5. Movant filed a reply in further support of its Motion on December 23, 2025, Dkt. No. 30, and this Court held a hearing on the Motion to Quash on January 14, 2026, at which both parties appeared and argued. Exhibit A ("Notes of Testimony").

Almost immediately after the hearing, Respondent informed Meta that it was withdrawing the Summonses, and on January 21, 2026, Respondent filed a "Notice of Withdrawal of Summonses" informing the Court that it had withdrawn the Summonses by email to Meta on January 16, 2026. Dkt. No. 34. The parties subsequently submitted a Stipulation of Dismissal on January 28, 2026, in which the parties agreed that "(1) DHS no longer seeks any information pursuant to the summonses that are the subject of the Motion to Quash; (2) DHS will not attempt to reissue the withdrawn summonses, nor will it issue any other administrative summonses or subpoenas seeking information about Montco Community Watch in connection with social media activity prior to January 20, 2026, or any materially similar social media activity generated after that date; and, (3) Movant consents to dismissal of their Motion to Quash." Dkt. No. 36. The parties also agreed that neither party would "waive any other rights or remedies they may have" by agreeing to dismiss the Motion to Quash. *Id.* On the same day, this Court ordered that the Stipulation to Dismissal was "so ordered," and dismissed the case. Dkt. No. 37.

## ARGUMENT

### I.    Movant is Entitled to Attorneys' Fees Under EAJA.

Under EAJA, Movant is entitled to the reasonable fees and costs that Movant's counsel expended to litigate the Motion to Quash because Respondent's decisions to issue the Summonses and to litigate the Motion to Quash were not substantially justified. "The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1166–67 (9th Cir. 2019) (quoting *Ardestani v. I.N.S.,* 502 U.S. 129, 138 (1991)). EAJA entitles individual litigants to recover attorneys' fees and costs from the federal government if: (1) they meet 28 U.S.C. § 2412(d)(2)(B)'s net worth requirements; (2) they are a "prevailing party"; (3) the government fails to show that its position was "substantially justified"; (4) no "special circumstances make an award unjust"; and (5) the fees requested are reasonable. *See id.* at 1167 (quoting *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)). Here, Movant meets the net worth requirements under 28 U.S.C. §

1  2412(d)(2)(B) because Movant is an individual with a net worth not exceeding $2,000,000 at the time

2  Movant filed the Motion to Quash. *See* Dkt. Nos. 39–40. Additionally, Movant is a prevailing party

3  because the Court's January 28, 2026, order incorporating the parties' stipulation, which prevents

4  Respondent from issuing materially similar subpoenas regarding MontCo Community Watch, materially

5  altered Movant's legal relationship with Respondent. Next, Respondent cannot satisfy its burden to show

6  that it took substantially justified positions in issuing the Summonses without reasonable legal or factual

7  bases or continuing to defend the Summonses from the Motion to Quash despite these glaring

8  insufficiencies. Finally, because there are no "special circumstances [to] make an award unjust" and

9  Movant seeks reasonable attorneys' fees and costs, this Court should grant Movant's request for attorneys'

10  fees and costs under EAJA.

11          **a.  Movant is a Prevailing Party.**

12         Movant is a prevailing party because the Court's January 28, 2026, order incorporating the parties'

13  stipulation materially altered the parties' legal relationship. The Supreme Court has held that a litigant is

14  a prevailing party if their lawsuit resulted in a "material alteration of the legal relationship of the parties"

15  that was "judicially sanctioned." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Hum.*

16  *Res.*, 532 U.S. 598, 604–605 (2001); *Perez–Arellano v. Smith*, 279 F.3d 791, 793–94 (9th Cir. 2002)

17  (applying *Buckhannon*'s prevailing party requirements to EAJA fee petitions). The "material alteration"

18  inquiry asks whether the resolution of a case "modif[ies] the defendant's behavior in a way that directly

19  benefits the plaintiff." *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1087 (9th Cir. 2003)

20  (quoting *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002)); *id.* at 1087 ("the

21  present settlement agreement materially altered the legal relationship between the parties, because the

22  defendants were required to do something directly benefitting the plaintiffs that they otherwise would not

23  have had to do").

24         *Buckhannon* does not require that a court issue a decision on the merits in order for a litigant to be

25  a prevailing party. A litigant can be a prevailing party even if they enter into a settlement agreement, as

26  long as a court incorporates that agreement into an order and the agreement materially alters the parties'

27  legal relationship. *Richard S.*, 317 F.3d at 1088. The Ninth Circuit decision in *Carbonell v. I.N.S.* is

28  instructive, as the court agreed with the appellant that he "qualifies as a 'prevailing party' under EAJA

because he obtained a court order incorporating a voluntary stipulation which awarded him a substantial portion of the relief he sought." 429 F.3d 894, 895 (9th Cir. 2005).

As in *Carbonell,* where the litigant was held to have materially altered his legal relationship with I.N.S. when he achieved the primary goal of his litigation (a stay of deportation) through a stipulated agreement, Movant materially altered their legal relationship with Respondent by achieving the primary goal of their litigation—quashing the Summonses—as well as the further benefit of Respondent agreeing not to issue materially similar subpoenas in the future. As a result of the Court's January 28, 2026, order, DHS was "required to do something directly benefitting the plaintiff[ ] that they otherwise would not have had to do." 429 F.3d at 900. Additionally, Movant is the prevailing party because the material alteration in the parties' legal relationship was judicially sanctioned through this Court's incorporation of the parties' stipulation into its January 28, 2026, order. As in *Carbonell*, the Court's issuance of an order incorporating the stipulation stamped the parties' agreement with judicial imprimatur, because if DHS were to reissue its Summonses (or a materially similar subpoena), Movant could return to this Court to enforce their stipulated agreement.

Movant has achieved a judicially sanctioned, material alteration of their legal relationship with DHS through the Court's January 28, 2026, order and is therefore a prevailing party under EAJA.

### b. Neither Respondent's Basis for Issuing the Summonses Nor Its Legal Positions in Opposing the Motion to Quash Were Substantially Justified.

Respondent cannot satisfy its burden to prove that *both* the Summonses themselves and Respondent's legal defense of those Summonses were substantially justified in light of both the law and the facts. A prevailing party is rebuttably presumed to be entitled to EAJA fees unless the government can show its position was substantially justified. *Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir. 1988). "The government bears the burden of showing that it was substantially justified in 'both its litigation position and the underlying agency action giving rise to the civil action.'" *Meza-Vazquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021) (citing *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013)). That means "the government's position must have a 'reasonable basis both in law and fact.'" *Meier*, 727 F.3d at 870; *id*. (the government's position must have been "justified to a degree that could satisfy a reasonable person." (quoting *Meier*, 727 F.3d at 870)).

**i. Respondent's Issuance of the Summonses was not Substantially Justified.**

Respondent's decision to issue the Summons was not substantially justified, because: (1) the Summonses are not authorized under 19 U.S.C. § 1509; (2) the Electronic Communications Privacy Act ("ECPA") prohibits Meta from disclosing the information sought; and (3) the Summonses violate core First Amendment protections.

**1. The Summonses are not authorized under 19 U.S.C. § 1509.**

Respondent was not substantially justified in issuing the Summonses because they exceeded DHS's statutory authority under 19 U.S.C. § 1509. Dkt. Nos. 1 at 7–10; 30 at 2–9. The Summonses were issued under the title "SUMMONS," "To Appear and/or Produce Records," under "19 U.S.C. § 1509." Dkt. Nos. 1-3, 1-4. Section 1509 confers limited authority to DHS in customs investigations to seek "records," as defined in the statute, related to the importation of merchandise. 19 U.S.C. § 1509(d). But neither the plain text of the statute, nor the principles of statutory construction, nor the statute's legislative history support DHS's interpretation of the statute allowing it to employ Section 1509 to investigate speech critical of ICE agents or baseless allegations of violations of federal criminal law related to threats to such agents. When offered multiple opportunities—in its written response to the Motion to Quash and in argument at a live hearing—Respondent proved unable to identify a single statutory provision authorizing the Summonses outside the context of a customs investigation involving importation of merchandise.

Section 1509 authorizes the U.S. Customs Service to request any "record" that may be relevant to a customs investigation for the purpose of "1) ascertaining the correctness of any entry [of merchandise]; 2) determining the liability of any person for duties, fees, and taxes due to the United States; 3) determining liability for fines and penalties or 4) insuring compliance with the laws of the United States administered by the [Customs Service]." *Id*., §§ 1509(a), (d)(1)(A). The first three categories permit limited requests pertaining to imports and exports. *Id*., §§ 1508, 1509(a)(2), (d)(1)(A). Under the statutory construction principles of *ejusdem generis* and *noscitur a sociis*, the fourth category is restrained by the first three. *See Yates v. United States*, 574 U.S. 528 (2015). Otherwise, the first three categories would be rendered meaningless and the statute would be "giv[en] unintended breadth" inconsistent with Section 1509's legislative history. *Yates*, 574 U.S. at 543; Dkt. No. 30 at 4—7. As such, Section 1509(a) only authorizes

subpoenas to produce records pertaining to imports and exports and records for which there is probable cause to believe pertain to merchandise that is illegal to import. DHS's own Office of Inspector General ("OIG") adopted this straightforward reading of Section 1509 in a 2017 report condemning exactly this type of DHS overreach.[8]

Respondent does not dispute that the subscriber information for social media accounts publishing speech critical of ICE that DHS seeks is completely unrelated to the importation/exportation of merchandise. Instead, Movant's activities, as demonstrated by the comprehensive list of MontCo Community Watch's public Instagram and Facebook account activity filed at dockets 30-3 through 30-5, involved communications by the account holders of their moral and political views and of local news and events related to DHS's public immigration enforcement activities. DHS's stated purpose of investigating speech critical of ICE agents, or alleged threats to such agents, is beyond the purpose of the statute and the authority granted therein. Therefore, DHS was not substantially justified in issuing the Summonses under Section 1509.

### 2.  ECPA Bars Meta from Complying with the Summonses

Because DHS lacked statutory authority to issue the Summonses, Respondent could not have been substantially justified in issuing the Summonses because ECPA prohibits Meta from providing the requested information. The Stored Communications Act (the "SCA"), enacted as Title II of the ECPA, 18 U.S.C. §§ 2701–2713, "protects the privacy of stored electronic files held by providers about their users, customers, and subscribers." *See In re AT&T Non-Disclosure Order*, No. 25-MR-1769, 2025 WL 3079326, at *3 (D. N. M. Nov. 4, 2025). Under the SCA, "a provider of remote computing service or electronic communication service to the public" may only disclose "information pertaining to a subscriber to or customer of such service" if certain specific requirements are met, 18 U.S.C. § 2702(c), including the condition that the governmental entity use a valid "administrative subpoena authorized by a Federal or State statute," *id.*, § 2703(c)(2). As an electronic communication service provider under the ECPA, *see In re AT&T*, 2025 WL 3079326 at *1, Meta may be compelled to provide the information sought by DHS

---

[8] *Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509*, DHS: Office of Inspector General (Nov. 16, 2017), https://www.oig.dhs.gov/sites/default/files/assets/Mga/2017/oig-18-18-nov17.pdf ("OIG Rpt."); *see also* Dkt. No. 1 at 9–10 (discussing OIG Rpt.).

1    in the Summonses only through a warrant, a court order, consent, or a statutorily authorized administrative

2    subpoena. 18 U.S.C. §§ 2702(a)(3), 2703(c). For the reasons discussed above, DHS lacked statutory

3    authority under 19 U.S.C. § 1509 to issue the Summonses. As such, Meta was prohibited under ECPA

4    from disclosing to DHS the subscriber records requested in the Summonses. DHS could not have been

5    substantially justified in issuing the Summonses because Meta could not lawfully comply with them under

6    ECPA.

7         Respondent offered a bogus procedural argument in response to this clear-cut ECPA limitation.

8    Dkt. No. 28 at 10. And at the Motion to Quash hearing, Respondent argued only that applying the ECPA

9    would render DHS's authority under Section 1509 a nullity. Neither argument passes the smell test.

10   Respondent's procedural argument has already been dispensed with. *See* Dkt. No. 30 at 1–2. And there is

11   no conceivable issue with the ECPA overriding DHS's actual authority under Section 1509 to request

12   records relating to importation of merchandise. The only reason ECPA is triggered here is because

13   Respondent has attempted to reach beyond its authority under Section 1509 to get subscriber data from an

14   electronic communications service provider that does not relate to any importation of merchandise that

15   might be governed by Section 1509.

16                    **3.  The Summonses violate Movant's First Amendment Rights.**

17         Finally, Respondent's position in response to Movant's First Amendment objections was not

18   substantially justified. It is beyond legitimate dispute that the Summonses chilled Movant's First

19   Amendment rights without achieving a sufficiently important governmental interest.

20         The First Amendment protects the rights to criticize governmental activity, to publish recordings

21   of government officers conducting official duties in public, and to associate anonymously with others. *See*

22   Dkt. No. 1 at 10–15; Dkt. No. 30 at 9–11. This Court has recognized "the ability to speak anonymously

23   on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely

24   without 'fear of economic or official retaliation ... [or] concern about social ostracism.'" *United States v.*

25   *Google LLC*, 690 F. Supp. 3d 1011, 1023 (N.D. Cal. 2023) (quoting *In re Anonymous Online Speakers*,

26   661 F.3d 1168, 1173 (9th Cir. 2011) and *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–42

27   (1995)). The unmasking of anonymous online speakers chills their First Amendment rights. *Ams. for*

28   *Prosperity Found. v. Bonta,* 594 U.S. 595, 607 (2021) ("[C]ompelled disclosure of affiliation with groups

engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958))); *id.* at 610 ("when it comes to 'a person's beliefs and associations,' '[b]road and sweeping state inquiries into these protected areas ... discourage citizens from exercising rights protected by the Constitution'" (quoting *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6 (1971)). Here, DHS's efforts to unmask Movant implicate this recognized right to anonymous association and chill Movant's First Amendment rights to criticize governmental activity and to publish content regarding DHS officials' public exercise of their official duties, by putting Movant in fear of baseless and retaliatory persecution. *See* Doe Decl. at ¶ 19 ("I believe the government is targeting me because it disagrees with the content of the speech that I have posted and reposted online."); *id.* ("I believe that my anonymity is the only thing standing between me and unfair and unjust persecution by the government of the United States.").

Because the Summonses implicate Movant's First Amendment rights, DHS's decision to issue the Summonses could be substantially justified only if DHS could satisfy exacting scrutiny. *Bonta*, 594 U.S. at 607; *Ward v. Thompson*, No. 22-16473, 2022 WL 14955000, at *1 (9th Cir. Oct. 22, 2022) (applying *Bonta*'s exacting scrutiny test to a governmental investigative subpoena). "[E]xacting scrutiny requires that there be 'a substantial relation between the disclosure requirement and a sufficiently important governmental interest,' … and that the disclosure requirement be narrowly tailored to the interest it promotes." *Bonta*, 594 U.S. at 611 (quoting *Doe v. Reed*, 561 U.S. 186, 196 (2010) (cleaned up) and citing *Shelton v. Tucker*, 364 U.S. 479, 488 (1960)). Baseless and generic accusations of alleged criminal activity are insufficient to meet this standard. *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) ("[w]e long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest"). Additionally, federal administrative subpoenas may be unenforceable if it "would be an abusive use of the court's process," such as if the subpoenas were "issued for an improper purpose, such as to harass the [recipient]." *United States v. Powell,* 379 U.S. 48, 51, 58 (1964); *see In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12 n.109 (E.D. Pa. Nov. 21, 2025) (collecting cases from recent months in which United States District Courts have quashed administrative subpoenas issued by Federal entities for improper purposes).

Here, the Summonses could never have survived exacting scrutiny because DHS has failed to show how any of Movant's activities might possibly violate federal criminal law. DHS proved unable to make this showing because, as a review of MontCo Community Watch's public Instagram and Facebook account activity demonstrates, Movant's online conduct is entirely lawful. Rather than serving any legitimate interest in investigating criminal conduct, DHS officials' public statements demonstrate a desire to stop the public from advocating against their immigration policies by threatening anyone who is "videotaping ICE law enforcement and posting photos and videos of them online" with criminal prosecution. *See* Dkt. No. 30 at 14–15. Thus, DHS has not met its burden to demonstrate the Summonses are directed to the important governmental interest of a good faith criminal investigation. Because the Summonses cannot survive exacting scrutiny, DHS was not substantially justified in issuing them.

### ii. Respondent's Positions in Opposing the Motion to Quash were not Substantially Justified.

In addition to lacking substantial justification for issuing the Summonses[9], Respondent's conduct in opposing the Motion to Quash was also not substantially justified. As such, Movant is independently entitled to fees under EAJA for Respondent's litigation conduct.

As an initial matter, Respondent's decision not to withdraw the Summonses until January 16, 2026, was not substantially justified. Movants filed their Motion to Quash on October 16, 2025, identifying that the Summonses were unlawful for the reasons described in Section I.b.i. above. Dkt. 1. Instead of withdrawing the Summonses, as DHS did in response to similar motions to quash other administrative "unmasking" subpoenas, Respondent submitted a brief on December 3, 2025. In it, Respondent incorrectly asserted that Section 1509 granted DHS sweeping statutory authority to investigate violations of the criminal law unrelated to commerce and that the First Amendment did not protect against administrative subpoenas to unmask anonymous social media users. Dkt. 28 at 10, 13. Respondent's position under §

---

[9] If this Court agrees that Respondent's pre-litigation conduct in issuing the Summonses was not substantially justified, it need not decide whether Respondent's litigation conduct (i.e., its opposition to the Motion to Quash) was substantially justified. EAJA entitles litigants to fees where the United States engaged in unreasonable pre-litigation conduct, irrespective of whether the United States later made reasonable arguments to defend it. *United States v. Marolf*, 277 F.3d 1156, 1163–64 (9th Cir. 2002) ("reasonable litigation position does not establish substantial justification in the face of a clearly unjustified underlying action."); *Meier v. Colvin*, 727 F.3d 867, 872 (9th Cir. 2013) ("Because the government's underlying position was not substantially justified, we need not address whether the government's litigation position was justified").

1509 could not be squared with the text of the statute. And its First Amendment argument ignored decades of binding Supreme Court precedent, relying instead on an unpublished decision—*Doe v. United States SEC*, No. 3:11-mc-80184, 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) ("*SEC I*")—while ignoring that the magistrate's analysis in that case was rejected weeks later by the District Court in *Doe v. United States SEC*, No. 3:11-mc-80209, 2011 WL 5600513, at *3 (N.D. Cal. Nov. 17, 2011) (discussing *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011)).

Movant responded to each argument made by Respondent in its Reply to Respondent's Opposition to Motion to Quash, which Movant filed December 23, 2025. Dkt. 30. But Respondent still did not withdraw the Summonses. At the January 14, 2026, hearing, the Court gave Respondent an opportunity to withdraw the Summonses, which it declined. Ex. A, N.T. 1/14/2026 at 7:20–21 ("we don't have a present intention to discuss that [i.e., withdrawal of the Summonses] right now"). Instead, the Respondent chose to roll the dice in the hopes of convincing the Court that the Summonses should not be quashed. Only after proving unable to substantially justify its positions at the hearing, likely recognizing that it had failed to convince the Court of its positions, did Respondent withdraw the Summonses. Respondent's decision to wait three months after Movant filed their Motion to Quash, and to feel out the Court's reception to its meritless arguments, before withdrawing its defective Summonses was not substantially justified.

In addition, Respondent took numerous specific positions during the January 14, 2026, hearing that were not substantially justified. For example, when pressed for "some theory" as to how the Summonses would survive a finding that section 1509 does not apply, Respondent's counsel responded, without explanation, that "this investigation and the subpoena for records from a communications provider is within the scope of traditional Customs duties if the Court's interpretation was to limit the scope that way," *id.* at 13:10–14. As the Court immediately indicated, that position was not substantially justified especially in light of Respondent's "concession that there are no cases using 1509 to go after subscriber information." *Id.* at 13:15–18.

Next, Respondent asserted that DHS administers and enforces the criminal law as it pertains to alleged violations of 18 U.S.C. § 115 for threats or impediments to DHS's officers. *Id.* at 13:22–15:8. As the Court noted, however, "normally, if there's a criminal statute out there, agree that DOJ is the

department -- or the U.S. Attorney's Office is the department that -- that enforces those laws or administers those laws[.]" *Id.* at 14:16–19. When the Court asked Respondent's counsel for *any* support for its position, including even "nonbinding authority elsewhere in the country that supports that position," *id.* at 15:5–7, Respondent could not provide a single authority, *id.* at 14:23–15:8. Respondent's inability to provide any support for the proposition that DHS administers the criminal laws using its Section 1509 summons power demonstrates that this position was not substantially justified.

Respondent's other unjustified positions included asserting that the 2017 OIG report which highlighted the "limit[ed] scope of third party summonses" under Section 1509 to "'records' pertaining to prohibited *merchandise*, or records required to be kept under 19 U.S.C. § 1508", relating to the importation of merchandise,[10] was not relevant because the report addressed the conduct of Customs and Border Protection, not ICE. *Id.* at 23:19–20. As the Court observed, "they're all under DHS," *id.* at 23:22–23, and Respondent could not provide "any authority that an Agency Inspector General report with regard to one part of the Agency somehow doesn't apply to the entirety of the Agency," *id.* at 24:1–4.

These examples highlight that Respondent's conduct in litigating the Motion to Quash throughout this action was unreasonable. As such, Movant is entitled to attorneys' fees and costs under EAJA for such conduct.

### c. Movant Seeks Reasonable Fees and Costs.

To calculate an award of attorneys' fees, the Court begins with the "lodestar," the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The "resulting product is *presumed* to be the reasonable fee to which counsel is entitled." *Pa. v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotations omitted). "Where a plaintiff has obtained excellent results, [their] attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. As detailed in the accompanying declarations of counsel, the fees for each attorney calculated using the lodestar method in this case are as follows:

---

[10] "Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509." Available at https://www.oig.dhs.gov/sites/default/files/assets/Mga/2017/oig-18-18-nov17.pdf.

| Attorney[11] | Years of Experience | Total Hours | Hourly Rate | Amount |
|---|---|---|---|---|
| Jonathan H. Feinberg | 25 | 2.5 | $725 | $1,812.50 |
| Grace Harris | 6 | 7.2 | $315 | $2,268.00 |
| Seth Kreimer | 49 | 4.5 | $800 | $3,600.00 |
| Susan M. Lin[12] | 22 | 23.1 | $650 | $15,015.00 |
| Stephen A. Loney, Jr. | 22 | 82.9 | $630 | $52,227.00 |
| Ariel Shapell | 5 | 26 | $290 | $7,540.00 |
| Jacob Snow | 19 | 15.8 | $580 | $9,164.00 |
| **TOTAL** | | **162** | | **$91,626.50** |

**i. Movant Claims a Reasonable Number of Hours.**

"'[C]ourts generally defer to the 'winning lawyer's professional judgment as to how much time [] was required to spend on the case.'" *Costa v. Comm'r of SSA*, 690 F.3d 1132, 1136 (9th Cir. 2012). This principle applies equally in pro bono cases, including because private and public interest law firms forego matters where they would receive rates far above those permitted under EAJA and opportunities to help others in need. *Cf. Dennis v. Chang*, 611 F.2d 1302, 1306 n.12 (9th Cir. 1980) ("Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights.").

Here, the number of hours devoted to this matter reflect the extraordinary efforts required to develop arguments and evidence to protect Movant from having their identity exposed to a government agency that has targeted their social media accounts using plainly unlawful subpoenas when Movant has done nothing more than exercise their rights to free speech and association on matters of public importance. *See* Dkt. Nos. 42-48.

---

[11] Further demonstrating the reasonableness of Movant's request, Movant's counsel exercised billing discretion by not seeking recovery for (a) *de minimus* time spent by team members who are not listed below, and (b) more than 40 hours of research conducted by an ACLU of Pennsylvania legal fellow.

[12] Although the appearances of attorneys Harris and Lin were not entered in this Court before Respondent withdrew the Summonses, their input, review and strategic consultation with co-counsel on this matter (including their law partner, attorney Feinberg) were a critical component of the successful representation of Movant and are compensable. *See*, *e.g.*, *Cruceta v. City of New York*, No. 10-5059, 2012 WL 2885113, at *4 (E.D.N.Y. Feb. 7, 2012) (citing *Shadis v. Beal*, 692 F.2d 924, 927 (3d Cir. 1982)).

### ii.  Movant's Attorneys Are Entitled to Enhanced Rates.

As Movant is located in the Philadelphia metropolitan area, and lead counsel in this matter practice primarily in Philadelphia, counsel has calculated their fees based on the prevailing rates for civil rights attorneys of similar skill and experience in the Philadelphia market. The standard public interest attorney fee schedule published by Community Legal Services (CLS) in Philadelphia has been widely accepted by federal courts as "a fair reflection of the prevailing market rates in Philadelphia."[13] *MP ex rel. VC v. Parkland Sch. Dist.*, No. 5:20-cv-4447, 2021 WL 5177012, at *2 (E.D. Pa. Nov. 5, 2021) (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001)). An attorney's admission to the bar is the relevant starting point for evaluating experience. *Id.*

Moreover, enhanced rates above the cost-of-living adjusted rate can be justified by "a special factor," 28 U.S.C. § 2412(d)(2)(A)(ii), such as when there is a limited availability of "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). In general, special factors can include "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id*. An attorney's experience in earlier litigation involving similar issues is sufficient prior experience to justify an enhanced fee award, *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1160–61 (9th Cir. 2008), when their "knowledge or skill is not available elsewhere at the statutory rate" within the market where they practice, *Nat'l Family Farm Coal. v. EPA*, 29 F.4th 509, 511 (9th Cir. 2022) (internal quotation omitted).

In this case, Movant's lead attorneys are specialists in complex constitutional litigation. *See* Dkt. Nos. 42-48. Movant's counsel are also uniquely suited to their role in this case, having previously litigated similar motions to quash DHS subpoenas. *See* Dkt. No. 48 at ¶ 7. Movant would not have been able to locate counsel with comparable knowledge or skill within the relevant markets who would have taken on a matter of this size, complexity, and intensity at the statutory rate. *See* Dkt. Nos. 42-48. Locating counsel with that knowledge or skill is particularly challenging for motions like Movant's, which often must be filed in a matter of days in order to stop the disclosure of the identities of the account holders to Respondent.

---

[13] *See* https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited Jan. 28, 2026).

### iii.   Movant is Entitled to Recover Out-Of-Pocket Costs.

The EAJA provides that the prevailing party can recover litigation expenses and costs in addition to attorneys' fees. 28 U.S.C. §§ 2412(a)(1), 2412(d)(1)(A); *see Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985) (upholding "costs that are ordinarily billed to a client," including those for telephone calls, postage, air courier and attorney travel expenses); *Bickley v. CenturyLink, Inc*., No. CV 15-1014-JGB, 2016 WL 9046911, at *8 (C.D. Cal. Nov. 29, 2016) (awarding costs for travel expenses and time). Here, Movant seeks an award for "other expenses" including out-of-pocket costs typically billed to a client, including the cost of transcripts, filing fees, and travel expenses. *See* Dkt. No. 48 at ¶ 15; Dkt. No. 46 at ¶ 17–18. Specifically, as detailed in the accompanying declarations of attorneys Loney and Snow, *see* Dkt. No. 48 at ¶ 15, Dkt. No. 46 at ¶ 17–18, Movant's counsel incurred the following reimbursable costs:

| Item | Cost |
|---|---|
| N.D. Cal. filing fees | $52.00 |
| Airfare (for 1/14/26 hearing) | $610.68 |
| Lodging (for 1/14/26 hearing) | $192.87 |
| Carfare (for 1/14/26 hearing) | $152.58 |
| Airport parking (for 1/14/26 hearing) | $84.00 |
| Transcript (for 1/14/26 hearing) | $265.55 |
| **TOTAL** | **$1,357.68** |

## II.   Movant is Entitled to Attorneys' Fees Under Rule 45(d)(1).

In addition to their entitlement to fees and costs under EAJA, Movant is entitled to fees and costs under Rule 45(d)(1) of the Federal Rules of Civil Procedure, as DHS issued the Summonses without statutory authority and for the improper purpose of chilling Movant's First Amendment rights. Rule 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Under the Rule, "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* A court may "impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans*

*Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *see, e.g., Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-MC-80076-JSC, 2017 WL 446316, at *4 (N.D. Cal. Feb. 2, 2017) (awarding $51,961 in attorneys' fees under Rule 45(d)(1) for time spent defending against a motion to compel an overbroad third-party subpoena); *McAllister v. St. Louis Rams*, LLC, No. 2:17-MC-157-AB (KSX), 2018 WL 6164281, at *6 (C.D. Cal. July 2, 2018) (finding that a $47,000 attorneys' fee award would be reasonable under Rule 45(d)(1) for time spent preparing and arguing a motion to quash third-party subpoenas).

DHS issued the Summonses in a manner inconsistent with existing law, because it did not have the authority under 19 U.S.C. § 1509 to seek information unrelated to the importation or exportation of merchandise. As further discussed in Section I.b.i.1. above, Section 1509 authorizes DHS to issue subpoenas for records related to commerce. The statute's subpoena authority does not extend to investigations of alleged violations of the criminal law, the unfounded basis upon which Respondent's claimed to have issued the Summonses. *See* Dkt. No. 28 ("Respondent's Opposition to Motion to Quash").

Additionally, the Summonses were issued for the improper purpose of chilling Movant's First Amendment rights to associate anonymously and speak on issues of public importance. As discussed in Section II of the Background above, immediately prior to the Summonses' issuance and during the course of this litigation, DHS made public statements demonstrating hostility to First Amendment protected activity critical of their immigration enforcement operations. Additionally, Respondents issued similar unmasking subpoenas for other social media accounts critical of their conduct, which they later withdrew. Given the absence of *any* evidence to support the proposition that the Summonses were issued to investigate Movant's supposed involvement in conspiracies, threats, or attempts to assault, kidnap, or murder federal officials, it is clear that the Summonses were issued to silence Movant, a patently improper purpose.

By serving and then litigating the Summonses without legal authority or proper purpose, Respondent failed to take reasonable steps to avoid imposing undue burden or expense on Movant. As a result, Movant bore the undue burden of litigating the Motion to Quash. Therefore, Movant is entitled to fees and costs under Rule 45(d)(1) of the Federal Rules of Civil Procedure.

1

**CONCLUSION**

2    For the foregoing reasons, Movant respectfully requests that the Court award them attorneys' fees

3    and costs in the amount of $92,984.18.

4

5    Dated: February 10, 2026                    Respectfully submitted,

6                                                By: _/s/ Stephen A. Loney, Jr._

7                                                Stephen A. Loney, Jr. (admitted *pro hac vice*)
                                                 Ari Shapell (admitted *pro hac vice*)
8                                                Keith Armstrong (admitted *pro hac vice*)

9                                                AMERICAN CIVIL LIBERTIES UNION OF
                                                 PENNSYLVANIA
10

11                                               Jonathan H. Feinberg (admitted *pro hac vice*)

12                                               KAIRYS, RUDOVSKY, MESSING,
                                                 FEINBERG & LIN, LLP
13
                                                 Seth Kreimer (admitted *pro hac vice*)
14
                                                 Caitlin Barry (admitted *pro hac vice*)
15
                                                 Jacob Snow (CA Bar No. 270988)
16                                               Matthew T. Cagle (CA Bar No. 286101)

17                                               AMERICAN CIVIL LIBERTIES UNION
                                                 FOUNDATION OF NORTHERN CALIFORNIA, INC.
18

19                                               *Attorneys for Movant*

20

21

22

23

24

25

26

27

28